UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHERINE ARRINGTON[1] | * |
| Plaintiff, | * |
| v. | *   Civil Action No. 22-_____ |
| DEPARTMENT OF DEFENSE<br>1000 Defense Pentagon<br>Washington, D.C. 20301-1000 | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, and Privacy Act, 5 U.S.C. § 552a, as amended, seeking the production of records responsive to requests submitted to the Defendant Department of Defense, and various sub-components it controls.

## JURISDICTION

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B), § 552a(d)(1), (g)(1)(B), (g)(3)(A) and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B), § 552a(g)(5) and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Katherine Arrington ("Arrington") is a U.S. citizen, and a resident of the State of South Carolina. She joined the Department of Defense in 2019, as a highly qualified expert and

---

[1] Pursuant to LCvR 5.1(c)(1), as revised March 23, 2022, the Plaintiff's home address is being filed under seal with the Court in a separate Notice of Filing.

served as a civilian employee in the Senior Executive Service until February 2022 when she resigned to run for Congress.

4. Defendant Department of Defense ("DoD") is an agency within the meaning of 5 U.S.C. § 552(f) and § 552a(a)(1) and is in possession and/or control of the records that were requested by Arrington. DoD controls – and consequently serves as the proper party defendant for litigation purposes for – the National Security Agency ("NSA"), the Office of Inspector General ("OIG"), Defense Counterintelligence and Security Agency ("DCSA"), the Consolidated Adjudications Facility ("CAF"), and the Department of Air Force's Office of Special Investigations ("AFOSI").

## FACTS

5. On Friday, May 7, 2021, at approximately 9:00 AM EST, Arrington was telephoned and notified that NSA had revoked her access to a certain level of classified information. Later that same day, at approximately 5:00 PM EST, Arrington was notified she was being placed on administrative leave effective immediately. No other details were provided at that time.

6. By Memorandum dated May 11, 2021, Arrington was formally notified by a security officer within the Office of the Under Secretary of Defense for Acquisition and Management that her security clearance for access to classified information was suspended. It was noted that this "action is being taken as a result of a reported Unauthorized Disclosure of Classified Information and subsequent removal of access" by the NSA. It also warned the Plaintiff that her actions might have constituted a federal crime.

7. By Memorandum dated May 12, 2021, Arrington was notified by Deputy Assistant Secretary for Industrial Policy, Jesse Salazar, a political appointee of President Joseph R. Biden's

Administration, in the Office of the Under Secretary of Defense for Acquisition and Management, that she was now in a paid, non-duty status in light of her clearance access suspension.

8. Despite repeated requests to DoD, NSA and DCSA for any information pertaining to NSA's actions and the reasoning for the clearance access suspension, no substantive information was provided.

9. Upon information and belief, and for informational background purposes, the NSA's action to allege Arrington committed any type of security violation was baseless and/or exaggerated and normally would not serve as the grounds to immediately suspend an individual's clearance access. The decision was designed to interfere with the cyber security activities that Arrington was running through DoD, which NSA did not support. Nor did certain high-ranking DoD officials want Arrington serving in a senior position within the Biden Administration due to her close previous ties with President Trump and they used NSA's decision as a pretext to remove her.

10. In fact, there was no reason for DoD to suspend Arrington's Top Secret security clearance simply because NSA had removed her access to a small subset of information that was not needed for her to continue her daily work. Upon information and belief, the decision to unnecessarily suspend her DoD security clearance was for the reasons stated above.

11. Since the suspension action of May 11, 2021, unknown individuals within DoD improperly, and possibly illegally, leaked privacy protected information concerning Arrington to unauthorized third parties for the purpose of further causing her harm. Some of the leaked information has, in fact, been completely false and defamatory, such as assertions that her security clearance had been revoked and that she had been fired. Neither of these events ever occurred.

12. By Memorandum dated October 28, 2021, the DoD CAF issued a Statement of Reasons ("SOR") proposing revocation of Arrington's eligibility for access to classified information based on Adjudicative Guideline K: Handling Protected Information.

13. The SOR noted that AFOSI had reviewed the details of the incident and concluded on May 13, 2021, that it "could not identify any nefarious intent which would warrant a criminal or counterintelligence investigation at this time."

14. But the SOR failed to provide any useful meaningful facts to allow Arrington to actually substantively respond to the allegations. For example, Arrington was not informed of the type or nature of the information, which was identified only as "Top Secret", that was disclosed. Nor was Arrington even told the date upon which the alleged incident occurred or provided specific identification of the person or entity to whom she allegedly released this classified information. In fact, not one additional substantive fact was provided beyond what was stated in the initial suspension memorandum dated May 11, 2021. No reference was made in the SOR that this information could not be provided, or that available binding due process procedures were not available, due to classification concerns.

15. Additionally, the SOR also alleged that Arrington failed to personally report the alleged security violation, "as required", but no supporting citation was identified to demonstrate what requirement was violated. The most basic facts underlying the SOR were completely withheld from Arrington in contravention of numerous applicable laws.

16. Section 5.2(a)(1) of Executive Order 12968 required the Defendant to provide "as comprehensive and detailed a written explanation of the basis for that conclusion as the national security interests of the United States and other applicable law permit." Intelligence Community Policy Guidance 704-3 (D)(1)(a) required the Defendant to provide a

"comprehensive written explanation of the basis" of the revocation as the "national security interests of the United States and other applicable laws permit."

17. Subject to the same caveat regarding the interests of the United States, Paragraph 10.2 of DoDM 5200.02 further articulates that the written explanation must be both "comprehensive" and "detailed". Paragraph 10.4 further articulates that a "summary of the security concerns and supporting adverse information" must accompany the SOR. In fact, Paragraph 10.4(2) required that the "SOR must explain each security concern, state the specific facts that trigger each security concern, identify the applicable adjudicative guideline(s) for each concern, and provide the disqualifying conditions and mitigating conditions for each adjudicative guideline cited." The SOR fundamentally failed to meet these, and other, legal standards in violation of binding law.

18. Although the circumstances surrounding the allegations against Arrington occurred in May 2021, and while AFOSI was able to sufficiently review the situation in just a matter of days in order to determine that no criminal or counterintelligence investigation was warranted, the Defendant suspiciously refused to conduct even a routine substantive investigation of the allegations. Not even Arrington was interviewed, much less asked. Indeed, upon information and belief, the entire matter could have been easily resolved within a week or two through a handful of interviews of key witnesses, all of whom are known to the Defendant.

19. Previous litigation addressed the perceived deficiencies in the SOR in <u>Arrington v. Dep't of Defense et al.</u>, Civil Action No. 21-2669 (D.D.C.)(JEB). As a result, the Defendant issued a supplemental SOR with additional details on December 20, 2021. The lawsuit was then settled, which included the payment of attorney's fees, and dismissed on January 29, 2022. Nothing within that lawsuit impacts the requests at issue in this matter.

20. Now having left federal employment in order to pursue her public service objective as an elected congressional representative of the State of South Carolina, this FOIA/Privacy Act lawsuit will nonetheless enable Arrington to expose the misconduct and inappropriate actions/omissions of the Defendant to improperly suspend her security clearance and its apparent deliberate failure to conduct a substantive investigation of the allegations.

## COUNT ONE

21. Arrington repeats and realleges paragraphs 5 through 20 above, inclusive.

22. By way of the NSA online portal, on June 30, 2021, Arrington submitted a FOIPA request to NSA for all records pertaining to her and "any and all communications within NSA or between NSA and other U.S. Government agencies regarding alleged security violations by Ms. Arrington; dating from April 1, 2021 until the date NSA begins conducting searches for responsive records." Her FOIA case was assigned number 112485 and her Privacy Act request was assigned case number 11241.

23. By way of the DoD online portal, on June 30, 2021, Arrington submitted a FOIPA request to DoD for all records pertaining to her and "any and all communications within NSA [sic](should have said DoD) or between NSA and other U.S. Government agencies regarding alleged security violations by Ms. Arrington; dating from April 1, 2021 until the date NSA [sic](should have said DoD) begins conducting searches for responsive records." Her FOIPA request was assigned number 21-F-1217.

24. By way of the FOIAOnline portal, on June 30, 2021, Arrington submitted a FOIPA request to DCSA. On November 1, 2021, Arrington also submitted a FOIPA request to DoD CAF. By way of a letter dated November 22, 2021, DCSA issued a consolidated final response

with respect to both FOIPA requests. The consolidated response was designated as case number 21-FP-1008. That same day, Arrington submitted an administrative appeal.

25. By way of the FOIAOnline portal, on September 15, 2021, Arrington submitted a FOIPA request to the Defendant's Office of Inspector General. The request was received on September 16, 2021, and assigned case number DODOIG-2021-001420. No further communications regarding this request have been received.

26. By way of the DoD online portal on November 22, 2021, Arrington requested copies of all DoD records discussing her security clearance, the suspension of her clearance, and/or the proposed revocation of her security clearance. The following individuals were identified as likely possessing responsive records: (1) Jesse Salazar – Deputy Assistant Secretary of Defense for Industrial Policy ("ODASDIP"); (2) Jeremy Wall, Lead, A&S Security/Facilities; (3) Misty Cedano – Director, Acquisition Workforce and Talent Management at the Office of the Under Secretary of Defense for Acquisition and Sustainment; (4) Aissa Tovar – Acting Chief of Staff, ODASDIP; and (5) Antonio King – Director of Business Operations, ODASDIP. Additionally, it was noted that responsive records would be found in the possession of but not limited to the Office of General Counsel and the Office of Security.

27. By way of the DoD online portal on March 1, 2022, Arrington submitted the same request identified above in paragraph 23 but updated it to include all records dating from June 30, 2021, up until the date DoD begins conducting searches for responsive records.

28. By letter dated March 8, 2022, AFOSI acknowledged it had received Arrington's request dated November 1, 2021 (reference DCSA-M 21-FP-1008), and assigned it tracking number 2022-00942-F. The letter indicated certain information was withheld and an administrative appeal was submitted.

29. Arrington has constructively exhausted her administrative remedies with respect to all of the FOIPA requests (and/or appeals) listed in paragraphs 22 through 28.

WHEREFORE, Plaintiff Katherine Arrington prays that this Court:

(1) Order DoD and its subcomponents to release copies of all non-exempt responsive records to her;

(2) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552(a)(4)(E), § 552a(g)(3)(B) and/or 28 U.S.C. § 2412(d);

(3) Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(4) Grant such other relief as the Court may deem just and proper.

Date:   April 5, 2022

                            Respectfully submitted,

                                /s/ *Mark S. Zaid*
                            _____
                            Mark S. Zaid, Esq.
                            D.C. Bar #440532
                            Bradley P. Moss, Esq.
                            D.C. Bar #975905
                            Mark S. Zaid, P.C.
                            1250 Connecticut Avenue, N.W.
                            Suite 700
                            Washington, D.C. 20036
                            (202) 454-2809
                            (202) 330-5610 fax
                            Mark@MarkZaid.com
                            Brad@MarkZaid.com

                            Attorneys for the Plaintiff